**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Curtis Brady Jr.,

       Plaintiff

v.

James Dzurenda, et al.,

       Defendants

Case No.: 2:17-cv-02534-JAD-VCF

**Order Granting in Part Defendants'
Motion for Summary Judgment and
Ordering Plaintiff to Show Cause Why
Claims Against Defendant Barron Should
Not Be Dismissed**

[ECF No. 46]

Pro se plaintiff Curtis Brady Jr. sues several current and former Nevada Department of Corrections (NDOC) employees for threats and harassment that he claims occurred while he was in custody at the High Desert State Prison (HDSP).[1]  Brady claims that, during his time in prison, three correctional officers (COs) prevented him from filing grievances against them and used excessive force against him.  He adds that the supervisors knew of this conduct but failed to protect him from the COs.  The defendants now move for summary judgment on all of Brady's claims, arguing that he failed to exhaust his administrative remedies, certain employees are entitled to qualified immunity, and there is no genuine issue of material fact about the COs' motivation for their actions or the supervisor and caseworker's indifference to his safety.[2]

Because Defendant Morris Guice Jr. enjoys qualified immunity from the excessive-force claim, I grant him summary judgment on that claim.  I also grant summary judgment for Associate Warden Ronald Oliver and caseworker Joseph Faliszek on Brady's deliberate-

---

[1] ECF No. 6 (complaint).

[2] ECF No. 46 (motion for summary judgment).

indifference claim because he did not present evidence showing a disputed fact about their subjective indifference.  I grant Oliver and Sergeant Stephen George summary judgment on Brady's First Amendment retaliation claim because they did not personally participate or fail to act to prevent the retaliation.  But I deny COs Antonio Bryant and Guice's motion for summary judgment on that claim because I find on this record that Brady exhausted his administrative remedies and that genuine disputes of material fact exist about whether the COs acted in retaliation for Brady's request for a grievance form.

**Background**

In 2016, Brady was imprisoned at HDSP.[3]  During his time there, Brady had several less-than-cordial encounters with correctional officers (COs) Guice, Bryant, and Barron.[4]  Two principal events form the basis for Brady's claims.

The first event happened in March 2016.  Brady claims that in March 2016, CO Guice left prisoners waiting outside of their cells while he ate his dinner.[5]  Brady claims that when Guice returned from his meal, he began yelling at the inmates, challenging them to fight him, and showing indifference to those inmates requesting to fill out grievances or see a sergeant or lieutenant.[6]  The next day, Guice taunted the inmates—calling them "bitches"[7] before pointing a shotgun at Brady and others and saying "give me a reason."[8]  Brady filed an informal grievance

---

[3] *See* ECF No. 46-2 at 2 (Case Note).  These facts largely stem from Brady's grievances and declarations from his cellmate and they should not be construed as findings of fact unless otherwise stated in this order.

[4] *See, e.g.*, ECF Nos. 46-1 at 2; 46-4 (Brady's grievances).

[5] ECF Nos. 46-4 at 41; 52 at 14 (Guardado affidavit).

[6] ECF Nos. 46-4 at 42–43; 52 at 14, 15.

[7] ECF Nos. 46-4 at 43; 52 at 15–16.

[8] ECF No. 52 at 17 (Guardado declaration).

about the situation two days later.[9]  He filed subsequent appeals on that grievance on April 9,[10] and then on June 21.[11]  They were all denied.[12]

The second event occurred on May 6th.  Brady claims that CO Bryant approached his cell door and demanded to see proof of ownership of his and his cellmate's shoes.[13]  But Brady's inability to produce the paperwork that Bryant wanted prompted an altercation.[14]  According to Brady, after he asked for a grievance form, Bryant told him he would not give him one and instead said that he would "come tear [his] house up."[15]  Bryant left but returned with Guice and then demanded that Brady and his cellmate exit their cell so they could search it.[16]  Brady began to exit the cell when he and his cellmate heard Guice rack a shotgun.[17]  Because Guice had previously threatened the pair, they refused to leave the cell, fearful of being shot.[18]  Eventually, then-Lieutenant Oliver came to defuse the situation, speaking with the inmates while the officers searched their cell.[19]  Familiar with the process, Brady filed several informal grievances about the issue.[20]  Many of his attempts were unsuccessful and returned as insufficient and abandoned

[9] ECF No. 46-4 at 41 (Informal Grievance #20063020146).

[10] *Id.* at 39 (First-Level Grievance #20063020146).

[11] *Id.* at 38 (Second-Level Grievance #20063020146).

[12] *See id.* at 46, 47, 37.

[13] ECF No. 46-1 at 2.

[14] ECF No. 52 at 18; *see* ECF No. 46-1 at 2.

[15] ECF No. 52 at 18.

[16] *Id.* at 18, 23 (Informal Grievance #20063025289).

[17] *Id.* at 18; *see* ECF No. 46-1 at 2.

[18] ECF No. 52 at 18.

[19] ECF No. 46-1 at 2.

[20] *See* ECF Nos. 46-4 at 3, 4, 18; 52 at 39.

because he did not sign them—except for one.[21]  On May 23, Brady submitted an informal

grievance detailing the search and interaction with the officers.[22]  The parties dispute whether

Brady continued the appeal process.  According to the defendants, Brady's efforts stopped at the

informal level.  But Brady argues that he submitted both first- and second-level grievances that

the prison did not respond to.[23]

The next year, Brady filed this lawsuit.[24]  It survived screening on three claims: First

Amendment retaliation against Barron, Bryant, Guice, Oliver, and George[25]; Eighth Amendment

excessive force against Guice; and Eighth Amendment deliberate indifference to inmate safety

against Oliver and caseworker Joseph Faliszek, who reviewed many of Brady's grievances.[26]

Initially, the Nevada Attorney General's office refused to accept service on behalf of Barron,

claiming he was unknown.[27]  By 2019, Magistrate Judge Ferenbach ordered the Attorney

General's office to produce information about Barron so he could be served.[28]  After receiving

Barron's information, Judge Ferenbach ordered Brady to submit the USM-285 form with

Barron's information.[29]  Barron still has not been served.

---

[21] *Compare e.g.,* ECF No. 52 at 38 (Informal Grievance #20063023886), *with* ECF No. 46-4 at 18, 45, 47.

[22] ECF No. 46-4 at 18.

[23] ECF No. 52 at 10; 45 (First-Level Grievance #200630225289); 47 (Second-Level Grievance #200630225289).

[24] ECF No. 1 (receipt of initiating documents).

[25] Brady alleges that George knew of the retaliation and failed to act to prevent it.  ECF No. 6 at 8.

[26] ECF No. 5 at 11.

[27] ECF No 12 at 1.

[28] ECF No. 27 at 1.

[29] ECF No. 35.

The defendants now move for summary judgment on all of Brady's claims.[30]  First, they argue that Brady cannot establish that the May incident occurred in retaliation for Brady's request for a grievance form, and that Oliver and George cannot be liable as supervisors because they did not personally participate in the incident.[31]  Brady contends that the timing of the incident shows that the officers' actions were a direct response to his protected request.[32]  The defendants add that, because Brady filed several informal grievances but did not complete the process, he failed to exhaust his administrative remedies on his claim and the claim for deliberate indifference to safety.[33]  Next, the defendants argue that, Guice cannot be liable for excessive force because he never actually touched Brady.[34]  The defendants also raise a qualified-immunity defense for Guice, Oliver, and Faliszek's actions.[35]  Finally, the defendants argue that, even if they knew of the risks Guice and Bryant posed to Brady's safety, they did not act with deliberate indifference.[36]  I consider each argument in turn.

## Discussion

### I.      Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[37]  On summary judgment, the court views all facts and draws all inferences in the

---

[30] ECF No. 46.

[31] *Id.* at 4–7.

[32] ECF No. 52 at 3–4 (response to motion for summary judgment).

[33] ECF No. 46 at 13–14.

[34] *Id.* at 7–9.

[35] *Id.* at 9–10, 12–13.

[36] *Id.* at 11–12.

[37] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

light most favorable to the nonmoving party.[38]  When the non-movant would bear the burden of proof on a dispositive issue at trial, the moving party is not required to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[39]  The purpose of summary judgment is to avoid unnecessary trials when the facts are undisputed, so summary judgment is inappropriate when reasonable minds could differ on material facts.[40]

## II.     First Amendment retaliation claims

Of the incidents that form the basis of Brady's retaliation claim in his complaint, the officers move for summary judgment only based on the May one.[41]  They argue that Brady failed to exhaust his available administrative remedies because he did not file the appropriate appeals for the incident.  The officers also contend that Brady cannot prove that the May incident was in retaliation to his request for a grievance form.

### A.     There are disputed issues of material fact about whether Brady exhausted his administrative remedies.

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing a civil-rights action challenging prison conditions.[42]  The Supreme Court has interpreted the PLRA as "requir[ing] proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules . . . ."[43]  "An inmate

---

[38] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[39] *See, e.g.*, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

[40] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

[41] *See* ECF No. 46 at 4, 5.

[42] 42 U.S.C. § 1997e(a).

[43] *Woodford v. Ngo*, 548 U.S. 81, 91, 93 (2006).

need exhaust only such administrative remedies as are 'available,'"[44] which requires that the procedures "are 'capable of use' to obtain 'some relief for the action complained of.'"[45] In *Ross v. Blake*, the Supreme Court provided a non-exhaustive list of "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."[46] That list includes situations when a procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates," and "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[47]

To succeed on a PLRA-exhaustion defense at summary judgment, the defendant must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," before the burden shifts to the plaintiff to provide evidence that the remedy was unavailable to him.[48]  But "the ultimate burden of proof remains with the defendant."[49]  A court should grant summary judgment "[i]f undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust . . . ."[50]  But when disputed material facts exist, the court should deny summary judgment and "the district judge rather than a jury should determine the facts."[51]

---

[44] *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016).

[45] *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

[46] *Id.*

[47] *Id.* at 1860.

[48] *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Block*, 549 U.S. 199, 204 (2007)) (quotations omitted).

[49] *Id.*

[50] *Id.* at 1166.

[51] *Id.*

### 1. The grievance procedure at HDSP provided an available remedy to Brady.

Defendants have cleared the first hurdle of this defense by showing that Brady had available remedies. Within the NDOC, "[r]etaliation is a grievable [sic] issue."[52] The NDOC grievance procedure requires inmates to follow three steps to exhaust their grievances at the prison.[53] An inmate must first file an informal grievance, which is "reviewed, investigated[,] and responded to by the Department supervisor that has responsibility over the issue . . . or designated person."[54] An inmate who is denied relief or who does not receive a response to the informal grievance within 45 calendar days of receipt "may proceed to the next grievance level."[55] The inmate must initiate the first- and second-level grievance process before the formal grievance process ends.[56] While Brady argues that the process often seems futile, neither party denies that Brady could use this process to file his grievances against the officers. I thus find that the officers have met their burden to show that the grievance process was available to Brady.

### 2. There is a genuine dispute of material fact about whether Brady exhausted his remedies.

The officers argue that while Brady began the grievance process by filing several informal grievances, he never completed the process because he failed to "proceed[] to the mandatory first or second level[s]."[57] The officers submit several of Brady's informal grievances

---

[52] *See generally id.*

[53] ECF No. 46-3.

[54] *Id.*

[55] *Id.* at 6.

[56] ECF Nos. 46-3 at 14–15; 52 at 47.

[57] ECF No. 46 at 14.

1  with resolution from the prison.  But the officers appear to have mixed up incident numbers for

2  the May incident, and submitted Brady's separate grievances—about a T.V. repair—with a

3  similar grievance number.[58]  Brady maintains that he submitted grievances at each level but that

4  the prison did not respond to them.[59]

5         Defendants do not discuss the first- and second-level grievances Brady submitted about

6  the May incident, and they do not respond to his claim that the grievance forms lack a response

7  from the prison because they "instead provide[d] a separate paper . . . and do not supply [Brady]

8  with a copy."[60]  Instead, the defendants admit that Brady filed multiple informal grievances but

9  continue to assert that he never proceeded to the next levels, citing several pages of informal

10  grievances that Brady has filed.[61]  Viewing this evidence in the light most favorable to Brady,

11  defendants' documents do not resolve the genuine dispute about whether he failed to exhaust his

12  remedies when he filed the first- and second-level grievances about the May incident.  I thus

13  deny the officers' motion on the exhaustion issue, which means the burden does not shift to

14  Brady to produce evidence that he was precluded from accessing the available remedies.

15                    ***3.        Brady exhausted his administrative remedies.***

16         Because I deny the officers' motion for summary judgment on the exhaustion issue, I

17  must now resolve the disputed factual questions about exhaustion.[62]  If the court finds that the

18  prisoner has satisfied the PLRA's exhaustion requirement, "the case may proceed to the

19

20  [58] ECF No. 46-4 at 19–37.  Brady's grievance over the May incident is logged as incident
    #200630**25289**.  The officers submitted Brady's informal grievance and then his first- and
21  second-level grievances in incident #20063**32589**.  *Id.* at 19–35.

    [59] ECF No. 52 at 10.

22  [60] *Id.*

23  [61] ECF No. 53 at 4 (citing generally ECF No. 46).

    [62] *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).

merits."[63]  The disputed facts here center on whether Brady filed first- and second-level

grievances.  If he did, he has exhausted his administrative remedies on the retaliation claim.  If

not, he has not met NDOC's exhaustion requirement and this claim is not ripe for review.  After

reviewing the regulation provided by the officers[64] and the evidence submitted by Brady, I find

that Brady exhausted his administrative remedies on his retaliation claim.

      The language of NDOC's remedy procedure does not state what full exhaustion requires

but indicates that prisoners must request review at each level to exhaust a claim.[65]  The

regulation that the officers provide permits a prisoner to proceed to the next level if the prisoner

does not receive a response from the prison within the allotted time period.[66]  Prison officials

have 45 days to respond to informal grievances and first-level grievances, and 60 days to respond

to second-level grievances.[67]  Thus, under the language provided by the officers, it is immaterial

whether the prison responded to Brady's grievances if he did not receive a response within 60

days.  And neither party argues that Brady had to wait for a response to his second-level

grievance after the 60 day response period expired before coming to this court.[68]  Thus, I find

that the evidence presented by the parties shows that Brady exhausted his available

---

[63] *Id.* at 1171.

[64] ECF No. 46-3 (AR 740).

[65] *See* ECF No. 46-3 at 6, 10–14.

[66] *Id.* at 6 ("The inmate may proceed to the next grievance level, if a response is overdue.").

[67] *Id.* at 12, 14–15.

[68] Whether the regulation requires a prisoner to wait indefinitely for a response before coming to this court would not change the outcome here.  If prisoners are required to wait for a decision before fully exhausting their remedies, but the prison does not issue a response for almost a year, the process would almost certainly stop before issuing a response, leaving prisoners without an available remedy.  *See Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (citing *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016)).

administrative remedies before filing this lawsuit.  So I hold that the exhaustion defense is not available to the officers at trial on the retaliation claim.

### B.      There are triable issues of fact about Bryant and Guice's retaliatory intent.

"Of fundamental import to prisoners [is] their First Amendment 'right to file prison grievances. . . .'"[69]  In the prison context, a plaintiff must prove five elements to establish a retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[70]  Bryant and Guice argue that Brady cannot provide any admissible evidence to establish that the officers' actions were performed in retaliation for his filing of grievances—challenging only the causation element.

To establish causation on a retaliation claim, the plaintiff's conduct must be "the 'substantial' or 'motivating' factor behind the defendant's conduct."[71]  The Ninth Circuit held in *Brodheim v. Cry* that, on summary judgment, a plaintiff "need only 'put forth evidence of retaliatory motive, that taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent."[72]  At this stage, a plaintiff may rely on timing "as circumstantial evidence of retaliatory intent."[73]

Brady's claim relies on the timing of Bryant and Guice's disproportionate responses to his request for a grievance form on May 6th.  Brady argues that after several altercations

---

[69] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (bracket omitted).

[70] *Id.* at 567–68.

[71] *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

[72] *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

[73] *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

resulting in informal grievances against the officers, Bryant confiscated his shoes and searched his cell in retaliation for those grievances.[74]  He maintains that on May 6th, after he asked Bryant for a grievance form for refusing to accept proof that Brady owned the confiscated shoes, Bryant stated: "Grievance? I'll come tear your house up," before telling Brady and his cellmate to step out of the cell so he could search it.[75]  But before the two stepped out of their cell, they heard Guice rack a shotgun, indicating to the inmates that he was ready to shoot them.[76]  The officers argue that Brady is unable to prove that retaliation for the grievance request is the reason the officers conducted the search and that Guice racked the gun.

To support his timing argument, Brady offers the declaration of his cellmate Ernest Guardado,[77] who corroborates Brady's account of the incident.[78]  The officers do not offer a different explanation for why Bryant requested to search the cell.  In fact, the evidence that the officers provide seems to confirm that Bryant ordered Brady to leave the cell after "dialogue back and forth between both inmates and Senior Bryant."[79]  Thus, based on the events described by Guardado that support Brady's version of the facts, a reasonable jury could infer that the officers acted in retaliation to Brady's request for a grievance form.  Brady has presented evidence that presents a genuine issue of material fact as to the officers' intent, so I deny their motion on this claim.

---

[74] ECF No. 52 at 3–4.

[75] *Id.* at 3.

[76] *Id.* at 18–19.

[77] *Id.* at 4.

[78] *Id.* at 18.

[79] ECF No. 46-1 at 2.

## C.  Oliver and George are entitled to judgment on Brady's retaliation claim.

Although the issues of fact regarding the officers' conduct preclude summary judgment in their favor, the record does not similarly support this claim against supervisors Oliver or George.  "There is no respondeat superior liability under section 1983."[80]  Generally, supervisors are not liable under § 1983 for their employees' actions unless "the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."[81]  Oliver and George contend that summary judgment is appropriate because neither directly participated in the May search or threats.[82]  They add that, because neither of them knew of the misconduct before it happened, they cannot be liable for failure to act.[83]  Instead, they maintain that Oliver spoke with Brady about Brady's concerns and "upgraded" the issue "to supervisor level for review of possible staff misconduct."[84]

Brady argues that Oliver and George knew of Guice and Bryant's ongoing misconduct and the risk they posed, but they failed to move Brady to a different cell or discipline the officers.[85]  But Brady does not present any evidence that suggests that Oliver or George knew of the alleged violations and failed to prevent them, instead resting on assertions that the two had a duty to protect him.  But as the Ninth Circuit has instructed, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."[86]

---

[80] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[81] *Id.* (citing *Ybarra v. Reno Thunderbird Moblie Home Village*, 723 F.2d 675, 680–81 (9th Cir. 1984)).

[82] ECF No. 46 at 6–7.

[83] *Id.* at 7.

[84] ECF No. 46 at 7.

[85] ECF No. 52 at 5.

[86] *Taylor*, 880 F.2d at 1045.

So I grant summary judgment for Oliver and George on Brady's retaliation claim because he has failed to establish a genuine issue of material fact about their knowledge and failure to act.

### III.    CO Guice enjoys qualified immunity from Brady's excessive-force claim.

Qualified immunity shields government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[87]  While a district court may evaluate these prongs in any order, it should avoid starting with the first prong "when it would unnecessarily wade into 'difficult questions' of constitutional interpretation that 'have no effect on the outcome of the case.'"[88]  Conduct is immunized if either prong is not satisfied.[89]

To show that conduct violated a clearly established law, the plaintiff must prove that, at the time of the alleged misconduct, "the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[90] While this does not require the plaintiff to cite a case "directly on point," the "existing precedent must have placed the statutory or constitutional question beyond debate."[91]  The United States Supreme Court routinely instructs courts to not determine whether a right is clearly established "at a high level of generality."[92]  Instead, the law at issue must be specific to the facts at hand.[93]

---

[87] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[88] *Sjurset v. Button*, 810 F.3d 609, 615 (9th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009)).

[89] *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019).

[90] *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (quotation and brackets omitted); *see Robinson v. York*, 556 F.3d 817, 826 (9th Cir. 2009).

[91] *Ashcroft*, 563 U.S. at 741.

[92] *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

[93] *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft*, 563 U.S. at 742).

This requires a court to look at binding precedent to determine if "a reasonable officer would have had fair notice that the action was unlawful . . ."[94] before turning to "all available decisional law."[95]

Two separate incidents form the basis for this claim: the March incident in which Guice pointed the gun at him and threatened to shoot, and the May incident in which Guice racked the shotgun outside of Brady's cell.  Guice maintains that he is entitled to qualified immunity because no case has held—in the Eighth Amendment context—that threats without physical contact violate a clearly established law.[96]  Without citation, Brady argues that there is a plethora of case law establishing that threats of deadly force violate a prisoner's Eighth Amendment rights.[97]  Because neither party has provided me with much guidance, I look to the Ninth Circuit to answer whether racking a shotgun during a search or threatening deadly force violates a prisoner's Eighth Amendment rights.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from "unnecessary and wanton infliction of pain."[98]  Generally, threats by themselves do "not violate the Eighth Amendment."[99]  While the Ninth Circuit has alluded to a cognizable claim under the Eighth Amendment when verbal harassment is coupled with an intent to cause

---

[94] *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1060–61 (9th Cir. 2003)) (brackets omitted).

[95] *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (citing *Lum v. Jensen*, 876 F.2d 1385, 1387 (9th Cir. 1989), *cert. denied*, 493 U.S. 1057 (1990)).

[96] ECF No. 46 at 9–10.

[97] ECF No. 52 at 7.

[98] *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

[99] *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996).

psychological harm,[100] Guice's conduct here does not clearly meet this standard.  Rather, the Ninth Circuit has held that "it trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional wrong."[101]  In other, more egregious contexts, the Ninth Circuit has also implied that "psychological torture" may present a cognizable claim.[102]  For example, in *Grant v. Foye*, the Ninth Circuit noted that a threat, coupled with holding a gun to the individual's head and pulling the trigger, without firing, with purpose of scaring the victim, was sufficient to establish "wanton infliction of psychological torture."[103]

Other courts have looked to the Tenth Circuit's decision in *Northington v. Jackson*,[104] and the Fourth Circuit's decision in *Hudspeth v. Figgins*,[105] as the threshold to determine whether a threat amounts to cruel and unusual punishment.[106]  But *Grant*, *Northington*, and they *Hudspeth* are not binding precedent,[107] and they present situations far too factually distinguishable from Brady's claim.  The *Northington* and *Hudspeth* courts both dealt with scenarios in which an official threatened an individual who was not in prison.  And in

---

[100] *Id.*  Although other district courts have similarly highlighted the possibility of an excessive-force claim for verbal threats, they do not establish that Guice would have been on notice that the threats violated the Eighth Amendment because those cases generally involve verbal threats coupled with intent to cause psychological harm.  *See, e.g.*, *Parker v. Asher*, 701 F. Supp. 192, 195 (D. Nev. Dec. 16, 1988) (noting that the ruling was limited and holding "only that guards cannot aim their taser guns at inmates for the malicious purpose of inflicting gratuitous fear").

[101] *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987).

[102] *Grant v. Foye*, Nos. 91-55198, 91-55202, 1992 WL 371312, at *2 (9th Cir. Dec. 16, 1992).

[103] *Id.*

[104] *Northington v. Jackson*, 973 F.2d 1518, 1522–24 (10th Cir. 1992).

[105] *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978).

[106] *See Parker v. Asher*, 701 F. Supp. 192, 195 (D. Nev. Dec. 16, 1988) (citing *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978), *cert. denied*, 441 U.S. 913 (1979)).

[107] 9th Cir. R. 36-3 ("Unpublished dispositions and orders of [the Ninth Circuit] are not precedent . . . .").

*Northington*, the plaintiff alleged that the officer put a gun to his head and threatened to kill him.[108]  These cases are markedly different from Brady's account of the facts.  In neither the March nor the May incident did Guice put the gun to Brady's head.  And in May, Brady does not deny that Guice was outside both of his cell and his line of sight.  So I cannot say that any of these circuit-court decisions put Guice on notice that holding a shotgun from above and telling prisoners to "give [him] a reason to shoot" or racking a shotgun during a search violated the Eighth Amendment.  Because Brady has failed to provide a any case in which either alleged incident was held to violate the Eighth Amendment, I cannot find that the law on this point was clearly established.  So I grant Guice summary judgment on Brady's excessive-force claim based on qualified immunity.[109]

### IV.   Oliver and Faliszek are entitled to summary judgment on Brady's claim for deliberate indifference to his safety.

The screening order also permitted Brady to move forward on a claim against Oliver and caseworker Faliszek for deliberate indifference to Brady's safety, based on Brady's allegation that he informed them of the threats that Guice posed, but they did nothing.[110]  Under the Eighth Amendment, prison officials "must 'take reasonable measures to guarantee the safety of inmates.'"[111]  A prisoner must show that he was deprived of something that is "sufficiently

---

[108] *Northington*, 973 F.2d at 1522.

[109] Because I find that Guice enjoys qualified immunity, I need not and do not reach his remaining arguments on Brady's excessive-force claim.  I also deny Brady's request to order the defendants to produce documents about Guice's termination because discovery is closed and Brady has not shown he has complied with the meet-and-confer requirements of Federal Rule of Civil Procedure 37(a)(1) or L.R. 26-7.

[110] ECF No. 5 at 10.

[111] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

serious," which requires "the prison official's act or omission [to] result[] 'in the denial of the minimal civilized measure of life's necessities.'"[112]  Second, the prisoner must also prove the official acted with "deliberate indifference" to the prisoner's risk of the harm.[113]  To prove deliberate indifference, a prisoner "must show that prison officials 'knew of and disregarded' the substantial risk of harm, but the officials need not have intended any harm to befall the inmate; 'it is enough that the official . . . failed to act despite his knowledge of a substantial risk of serious harm.'"[114]  The second element is subjective and even when prison officials "actually knew" of a substantial risk to inmate safety, they may be found "free from liability if they responded reasonably to the risk."[115]

Brady argues that his grievances about Bryant and Guice's violent threats put Oliver and Faliszek on notice of the harm he faced.  He also claims that, despite being aware of his grievances, they failed to move him or investigate his claims by speaking with other inmates. Faliszek maintains that he was not indifferent to the risks that Bryant and Guice posed because he was unable, as a caseworker, to "intervene to correct the alleged actions" taken by the officers.[116]  He argues that he "did what he could" and reviewed Brady's grievances.[117]  Oliver contends that, once he knew of the situation between Brady and the officers on May 6th, he spoke with Brady to investigate the matter.[118]

---

[112] *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (quoting *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009)).

[113] *Farmer*, 511 U.S. at 834.

[114] *Lemire*, 726 F.3d at 1074 (brackets omitted).

[115] *Farmer*, 511 U.S. at 844.

[116] ECF No. 46 at 12.

[117] *Id.*

[118] *Id.*

1  While Brady offers evidence that Oliver knew of the May incident, he does not present

2  any evidence that Oliver knew of the prior incidents, nor does he offer evidence to support the

3  claim that Faliszek was able to do anything more than review his grievances.  Rather, he

4  provides only his and other inmates' grievances about the officers.  But these grievances do not

5  establish that Oliver knew about those altercations or that Faliszek could prevent future harm.

6  Because Brady has failed to put forward evidence to support these elements, I grant summary

7  judgment on his deliberate-indifference-to-safety claim against Oliver and Faliszek.[119]

8  **V.      Brady must show cause why I should not dismiss his claim against Barron.**

9  While this order addresses the claims against the majority of the defendants, it does not

10  address the claim against unserved defendant Barron.  Brady initiated this lawsuit at the end of

11  2017.[120]  By mid-2019, he still had not served a defendant whom he sued under the single name

12  "Barron."[121]  After the defendants submitted the name and last-known address of this defendant,

13  Magistrate Judge Ferenbach ordered Brady to complete a USM-285 form by June 12, 2019, so

14  Barron could be served.[122]  It has been more than 400 days since that deadline passed, and the

15  record reflects that Brady still has not submitted the form.  Thus, Brady must show cause why

16  his claim against Barron should not be dismissed for failure to follow Judge Ferenbach's order

17  and failure to timely serve this suit on Barron.  If Brady fails to show cause to continue with this

18  claim against Barron by October 25, 2020, the claim against Barron will be deemed abandoned

19

20

---

21  [119] Because I grant summary judgment on this argument, I need not and do not reach the issue of qualified immunity or exhaustion on this claim.

22  [120] ECF No. 1.

23  [121] *See* ECF No. 27.

[122] ECF No. 35.

and this case will proceed only against Guice and Bryant on Brady's First Amendment retaliation claim.

### Conclusion

IT IS THEREFORE ORDERED that **defendants' motion for summary judgment [ECF No. 46] is GRANTED IN PART AND DENIED IN PART:**

- Summary judgment is granted in favor of the defendants and against Brady on his:
    - First claim for relief (First Amendment retaliation) against defendants George and Oliver;
    - Second claim for relief (Eighth Amendment excessive-force) against defendant Guice; and
    - Third claim for relief (deliberate indifference to inmate safety) against defendants Oliver and Faliszek.
- The motion is denied in all other respects, so **this case proceeds on Brady's First Amendment retaliation claim against defendants Guice and Bryan only.**

IT IS FURTHER ORDERED that **Brady must SHOW CAUSE by October 25, 2020, why his claim against Barron should not be dismissed.**

IT IS FURTHER ORDERED that **this case is referred to the Pro Bono Program** adopted in General Order 2016–02 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as counsel for Plaintiff Curtis Brady Jr. at no expense to him.  The scope of appointment will be for all purposes through conclusion of trial.  By referring this case to the Pro Bono Program, I am not expressing an opinion on the

merits of the case.  The **Clerk of Court** is directed to forward this **order to the Pro Bono Liaison**.

IT IS FURTHER ORDERED that this case is **REFERRED** to the magistrate judge for a **MANDATORY SETTLEMENT CONFERENCE**.  The parties' obligation to file their joint pretrial order is **STAYED until 10 days after that settlement conference**.

_____
U.S. District Judge Jennifer A. Dorsey
September 28, 2020